# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

AQUA GULF LOGISTICS, INC.,

    Plaintiff,

v.                                           Case No. 3:23-cv-547-MMH-JBT

PRIMETIME GLOBAL
LOGISTICS, INC. and TFORCE
FREIGHT, INC.,

    Defendants.

## O R D E R

**THIS CAUSE** is before the Court on Defendant Primetime Global Logistics, Inc.'s Amended Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 33; Motion) filed on July 26, 2023.[1] In the Motion, Primetime requests that the Court dismiss Count II of Plaintiff Aqua Gulf Logistics, Inc.'s (AGL's) Complaint (Doc. 1) filed on May 5, 2023, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)). See Motion at 1. AGL timely filed a response in opposition to the Motion. See Memorandum of Law in Opposition to Primetime Global Logistics, Inc.'s

---

[1] Primetime amended its Motion to certify its compliance with Local Rule 3.01(g). See Motion at 1 n.1.

Amended Motion to Dismiss (Doc. 38; Response) filed on August 22, 2023.[2] Accordingly, this matter is ripe for review.[3]

## I. Legal Standard

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 & n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege

---

[2] AGL requested and received an extension of time in which to respond to the Motion. See Endorsed Order (Doc. 37) entered August 18, 2023.

[3] In a recent filing, Primetime incorrectly states that the Motion is "unopposed" because "[o]n August 24, 2023, this Court entered an Order denying the [Response]," and AGL had not filed a renewed response. See Motion for Protective Order and Incorporated Memorandum of Law (Doc. 42; Motion for Protective Order) at 3–4. In the referenced Order, the Court neither denied nor struck the Response. See Order (Doc. 40). Instead, the Court merely advised AGL that its request for affirmative relief—leave to amend—was not properly before the Court and would not be considered. See generally id. AGL was under no obligation to file any further opposition to the Motion.

"enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.     Background[4]

On May 9, 2022, "AGL emailed [Primetime] for carriage of" a pallet of 122 cases of wine from American Canyon, California to Jacksonville, Florida. Complaint ¶¶ 8–9. Primetime "accepted responsibility for the delivery." Id. ¶ 9. To facilitate the delivery, Primetime "coordinated with" GlobalTranz Enterprises, LLC (GlobalTranz) as a "freight forwarder and receiving/delivering carrier." GlobalTranz, in turn, utilized TForce Freight, Inc. (TForce) "as the motor carrier for the shipment." See id. ¶ 10. The wine shipment, "valued at $18,096.00," was ultimately "lost or destroyed" during transit, and was "never delivered to its destination." Id. ¶¶ 8, 22.

In seeking to recover damages for the loss of the shipment, AGL initially filed suit against GlobalTranz (Count I), Primetime (Count II), and TForce (Count III). See generally id. In each count, AGL asserted a claim of strict liability under the Carmack Amendment, 49 U.S.C. § 14706. See generally id. On June 15, 2023, AGL filed a notice requesting that the Court voluntarily dismiss its claim against GlobalTranz, and the Court did so the following day. See Order (Doc. 17) entered June 16, 2023. As such, AGL now pursues the

---

[4] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

claims in Counts II and III against Primetime and TForce, respectively. TForce answered the Complaint and has not sought dismissal. See Answer by Defendant, TForce Freight, Inc. and Affirmative Defenses (Doc. 14; TForce Answer) filed June 5, 2023. However, Primetime seeks to dismiss Count II of the Complaint for failure to state a claim upon which relief can be granted. Motion at 1.

### III. Discussion

"The Carmack Amendment [to the Interstate Commerce Act] was adopted to achieve uniformity in rules governing interstate shipments, including the rules governing injury or loss to property shipped." UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc., 750 F.3d 1282, 1285 (11th Cir. 2014). It "is a strict liability statute" which creates "a prima facie presumption of liability" when shipped goods are lost or damaged while in the possession of a motor carrier. See id. at 1285–86. Notably, however, the Carmack Amendment "does not apply to brokers, which are purposefully distinguished from motor carriers throughout the" Interstate Commerce Act. Essex Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1300 (11th Cir. 2018).

Here, Primetime contends that Count II must be dismissed because "the pleaded facts in the Complaint clearly indicate that TForce, not Primetime, was the motor carrier involved in the transaction," and that Primetime "acted as a broker," and as such, is not subject to liability under the Carmack Amendment.

Motion at 8–9.  In support, Primetime asserts that "[i]t is both factually inaccurate and impossible for two motor carriers to have both delivered the same cargo at the same time as alleged in the Complaint."  Id.  Primetime also contends that GlobalTranz issued a bill of lading which "clearly indicates that TForce is the motor carrier."[5]  Id.  Additionally, Primetime emphasizes that TForce "did in fact have possession of the shipment at the time of the alleged loss or damage."  Id. at 9.  According to Primetime, these facts establish that it is not a motor carrier, and thus that it has no liability under the Carmack Amendment.[6]  See id.

Determining whether a party is a broker or a motor carrier is an "inherently fact-intensive" inquiry.[7]  See Essex, 885 F.3d at 1302 (quoting

---

[5] Primetime argues that the "Court must consider" the bill of lading because it is "central to [AGL's] Complaint."  Motion at 6–7.  The Court is not persuaded by Primetime's assertion that the bill of lading is "central" to the Complaint simply because it "is arguably important" to the identification of "the delivering motor carrier."  See id. at 6.  More fundamentally, despite describing two bills of lading "marked as Exhibits A and B, respectively," Motion at 3, no party has actually attached or submitted a bill of lading such that the Court could consider it, even if it were inclined to do so.  Regardless, in the Complaint, AGL alleges that GlobalTranz "issued a house bill of lading . . . and had TForce as the motor carrier for the shipment."  Complaint ¶ 10.  And in its Response, AGL further acknowledges that the bill of lading describes TForce as the motor carrier for the shipment.  See Response at 3 (rejecting "[t]he fact that Tforce is listed on a bill of lading as the motor carrier" as proof that Primetime was not a motor carrier for purposes of the shipment).  In resolving the Motion the Court will assume that the bill of lading describes TForce as the motor carrier for the shipment.

[6] Primetime also states that "AGL has erroneously pled that Primetime has authority as a motor carrier."  Motion at 9.  This appears to refer to AGL's allegation that Primetime "is licensed with the U.S. Dep't of Transportation as a motor carrier."  See Complaint ¶ 6.  In its Response, AGL concedes that this was an error; its "preliminary research" uncovered a licensed motor carrier that is "similarly named" to Primetime.  Response at 2 n.1.  Accordingly, the Court does not consider this allegation in its analysis.

[7] For this reason, at least one court has observed that the inquiry is often "not

Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc., No. 09 Civ. 2365 (PGG), 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011)). Notably, a motor carrier need not be the entity that actually transported the shipment. See id. at 1301 (explaining that the Carmack Amendment "tracks longstanding common-law rules," including "the commonsense proposition that when a party holds itself out as the party responsible for the care and delivery of another's property, it cannot outsource its contractual responsibility by outsourcing the care and delivery it agreed to provide"). In addition, multiple motor carriers can be responsible for the same shipment. See 49 U.S.C. § 14706(a)(1) ("[t]hat carrier and any other carrier . . . are liable" (emphasis added)); Ever Better Eating, Inc. v. Jama's Express LLC, No. 8:21-cv-1798-CEH-CPT, 2022 WL 17782391, at *8 (M.D. Fla. Dec. 19, 2022) ("[T]he existence of one carrier does not preclude the liability of other carriers, because the Carmack Amendment expressly provides for the liability of more than one carrier.").

The Eleventh Circuit Court of Appeals discussed the distinction between a motor carrier and a broker in Essex, 885 F.3d at 1300–02. There, the court

---

appropriate for resolution on a motion to dismiss." See Swenson v. Alliance Moving & Storage LLC, No. 21-cv-01968-CMA-STV, 2022 WL 1508506, at *7 (D. Colo. Apr. 26, 2022) (citing Essex, 885 F.3d at 1302), report and recommendation adopted, 2022 WL 1500778.

The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

explained that under the Interstate Commerce Act, a broker is "'a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.'" Id. at 1300 (quoting 49 U.S.C. § 13102(2)). In contrast, an entity is a motor carrier if it is "'<u>providing</u> motor vehicle transportation for compensation.'" Id. (quoting 49 U.S.C. § 13102(14)). The "key distinction" between a broker and a motor carrier is "whether the disputed party accepted legal responsibility to transport the shipment." Id. at 1300–01. For this reason, "a party is not a broker under the Carmack Amendment if it has agreed with the shipper to accept legal responsibility for that shipment." Id. at 1301; accord <u>Tryg Ins. v. C.H. Robinson Worldwide, Inc.</u>, 767 F. App'x 284, 287 (3d Cir. 2019) ("If an entity accepts responsibility for ensuring the delivery of goods, then that entity qualifies as a carrier regardless of whether it conducted the physical transportation." (citing <u>Essex</u>, 885 F.3d at 1301)). While a party "can insulate itself from strict liability . . . if it makes clear in writing that it is merely acting as a go-between to connect the shipper" with a carrier, "[w]here no such writing exists, the question will depend on how the party held itself out to the world, the nature of the party's communications and prior dealings with the shipper, and the parties' understanding as to who would assume responsibility for the

delivery of the shipment in question." Essex, 885 F.3d at 1302. As the Eleventh Circuit stated in Essex, "the operative inquiry is this: pursuant to the parties' agreement, with whom did the shipper entrust the cargo?" Id.

Here, AGL alleges that it emailed Primetime "for carriage of the subject pallet of wine" and that Primetime "accepted responsibility for the delivery." Complaint ¶¶ 9–10. The Court must accept these factual allegations as true at this stage in the litigation, and they plausibly show that AGL entrusted the shipment to Primetime, and Primetime accepted legal responsibility for the shipment. Thus AGL has plausibly alleged that Primetime is a motor carrier for purposes of its claim under the Carmack Amendment.

Primetime's arguments to the contrary and in support of dismissal are unavailing. Primetime argues that the bill of lading establishes that TForce was a motor carrier, that TForce "did in fact have possession of the shipment at the time of the alleged loss or damage," and that it is "factually inaccurate and impossible for two motor carriers to have both delivered the same cargo at the same time." Motion at 4, 9. These arguments miss the mark.

As an initial matter, Primetime assumes that if TForce is a motor carrier, then Primetime cannot be a motor carrier for purposes of AGL's claims. But this assumption is inaccurate: multiple motor carriers may be liable for the same shipment. Ever Better Eating, 2022 WL 17782391, at *8 (citing 49 U.S.C. § 14706(a)(1)). Indeed, as noted above, the plain language of the

Carmack Amendment provides for the liability of more than one carrier.  Id.[8] Likewise, the bill of lading's reference to TForce as a motor carrier does not control whether Primetime is a motor carrier or a broker.  See id. (concluding that a defendant's omission from a bill of lading was "not dispositive of its liability").  And as discussed above, TForce's actual possession of the shipment is equally nondispositive.  See Essex, 885 F.3d at 1301.  "[T]he Eleventh Circuit has made clear that a 'motor carrier' as defined by the Carmack Amendment need not be the party who actually transports the shipment." Ever Better Eating, 2022 WL 17782391, at *8.  Similarly, while Primetime alleges in the Complaint that TForce "accepted responsibility for the delivery" (albeit from GlobalTranz, not AGL), this does not preclude a finding that Primetime also accepted responsibility for the shipment such that it too might fall within the definition of a motor carrier.[9]  See Essex, 885 F.3d at 1302 (explaining that the inquiry depends on "the parties' understanding as to who would assume responsibility for the delivery").  For these reasons, Primetime's

---

[8] Primetime's reliance on the fact that "TForce acknowledges that it is a motor carrier" in its Answer to the Complaint, see Motion at 4, is therefore of no consequence.  Not only can there be more than one motor carrier for a given shipment, even if there could be only one motor carrier, the Rules permit a party to plead "as many separate claims or defenses as it has, regardless of consistency."  Rule 8(d)(3).

[9] AGL does allege that TForce "is licensed with the U.S. Dept. of Transportation as a motor carrier."  Complaint ¶ 7.  But with respect to the shipment at issue, this fact is not dispositive of TForce's status as a motor carrier, let alone Primetime's.  See Essex, 885 F.3d at 1302 (noting that a company may "carr[y] some shipments and broker[ ] others"); see also Nipponkoa, 2011 WL 671747, at *4 (collecting cases for the proposition that an entity's licensure is not dispositive of its status).

arguments are unavailing. In Count II AGL states a plausible claim against Primetime under the Carmack Amendment. Thus, Primetime's Motion is due to be denied.[10]

Accordingly, it is

**ORDERED:**

1. Defendant Primetime Global Logistics, Inc.'s Amended Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 33) is **DENIED**.

2. Primetime must answer the Complaint in accordance with the Rules.

3. Primetime's Motion for Protective Order and Incorporated Memorandum of Law (Doc. 42) is **DENIED** as moot.

**DONE AND ORDERED** in Jacksonville, Florida on November 1, 2023.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc31
Copies to:
Counsel of Record

---

[10] In the Motion for Protective Order, Primetime seeks a stay of discovery pending the Court's resolution of the Motion. Because the Court now denies the Motion, the Motion for Protective Order is due to be denied as moot.